## PORTER *v.* HOLMES.

1. No writ of error shall be dismissed in the Supreme Court because the judge shall have failed to affix a date to his certificate to the bill of exceptions, unless it is affirmatively made to appear, by affidavit or other proof, that such official signature was made after the time required by law. If the certificate of the presiding judge is not dated, it will be presumed to have been

made on the day of the acknowledgment of service by counsel for the defendant in error.    What is said to the contrary in *Vickers* v. *Sanders*, 106 *Ga.* 266, and *Cooper* v. *State*, 121 *Ga.* 578, which conflicts with the ruling in *Swatts* v. *Spence*, 68 *Ga.* 496, must yield to the construction given to the Civil Code, § 5566, in the older case.

2. An error in the middle name of the insured in a policy of life-insurance will not, after his acceptance of the policy, constitute a valid defense to an action upon a promissory note given for the amount of the first premium due upon the policy, unless it affirmatively appears that, after discovering the error, the insured made a proper request for its correction and the same was refused by the insurance company.

3. The stipulation in the policy of insurance as to the apportionment of premiums for expenses was a substantial compliance with the charter requirement on that subject.

Argued April 24, — Decided May 10, 1905.

Complaint.    Before Judge Hodnett.    City court of Carrollton. August 27, 1904.

This was a suit upon a promissory note for the first premium due on a policy of life-insurance.    The note was signed by J. W. Holmes and was payable to E. H. Wyatt, or order, and endorsed in blank by the payee.    The plaintiff alleged that he was a purchaser of the note, for value and before maturity, from the payee. The defendant denied that the plaintiff was a bona fide holder for value before maturity, and averred that the note was without consideration; that it was given in contemplation of its being accepted by the Georgia Mutual Life and Annuity Insurance Company as a payment for the first premium on a policy of life-insurance for which the defendant had made application to the insurance company through one E. H. Wyatt, an agent of the insurance company; that the insurance company never issued any policy of life-insurance to defendant as was agreed upon by defendant and the agent, Wyatt, at the time the note was executed and delivered; and that the plaintiff had notice of this want and failure of consideration when he obtained the note.    By amendment the defendant further pleaded, that the Georgia Mutual Life and Annuity Insurance Company of Rome, Ga., had no authority to issue a policy of the character of the one it issued or pretended to issue to the defendant, for the first premium due on which the note sued on was given; that under its charter said company must state in the contract with the assured the portion of the premium to be paid by the assured which the company sets aside or reserves, or will set aside or reserve, for expenses in con-

ducting the business of the company, which was not done in the policy or pretended policy it issued to defendant, which facts were known to the plaintiff at and before the time he traded for the note sued on ; and that the issuance of the policy without this stipulation was ultra vires.    On the trial the charter of the Georgia Mutual Life and Annuity Insurance Company of Rome, Ga., was introduced in evidence.    The charter contained this pro- vision :    "The Company shall have power to set aside or reserve a stipulated portion of premiums for expenses in conducting the business of the Company, which portion of premiums shall be stated in the contract with the assured."    The policy of insurance was also introduced in evidence, and among other stipulations provided as follows :    "All installments of annuities and dis- ability claims that become due and payable within two years from the date of said policies shall be paid from a fund which shall be formed by setting aside the first two annual premiums and two dollars out of and fifteen per cent. of the annual pre- mium on each $200.00 annuity collected thereafter.    After pay- ing such death or disability claims, the balance of said fund shall be set apart and reserved for the payment of expenses of every kind in conducting the business of the company.    All premiums except as above specified shall go into and constitute the Mortuary and Reserve Fund of the Company, which, together with the interest accruing thereon, shall be used for the exclusive benefit and protection of the policy-holder, and under no circumstances shall any part of such fund be used to pay the expenses of the company except taxes on such fund."    The policy described the insured as Joseph Wallace Holmes; the defendant testified that his name was Joseph Walker Holmes.    The policy of insurance was sent to him through the mail, and "in about ten days or two weeks after it came [defendant] saw Mr. Wyatt and told him of the mistake in [defendant's] name, and he told [defendant] the company would correct it."    The defendant testified :    "I did not return the policy to the company, but it has been in my posses- sion and the possession of my attorney ever since I received it from the company.    The only objection I had to it was the mis- take in my middle name."    It appeared that Wyatt was the agent who negotiated the policy, and that the plaintiff was an officer of the insurance company at the time the policy was issued and

when he purchased from Wyatt the note sued on.   The verdict was for the defendant.   The plaintiff moved for a new trial on the usual grounds, and on the further ground that the court erred in allowing the defendant to testify as follows:   "I told him (E. H. Wyatt) my middle name was wrong; that my name was Joseph Walker Holmes and not Wallace Holmes, and that I did not consider I had any policy ; and Wyatt said he would have it corrected."   The motion for a new trial was overruled and the plaintiff excepted.

*S. E. Grow* and *R. D. Jackson,* for plaintiff.
*W. F. Brown,* for defendant.

EVANS, J.  (After stating the foregoing facts.)  1. On the call of the case in this court, a motion was made to dismiss the writ of error, because it did not affirmatively appear there was any service of the bill of exceptions on the defendant or his counsel after the signing of the certificate by the presiding judge.   The certificate to the bill of exceptions was not dated.   Due and legal service of the bill of exceptions was acknowledged by the defendant's attorney on September 5, 1904, and it was on that date filed in the clerk's office.   The bill of exceptions recited that the judgment overruling the motion for a new trial was rendered August 27, 1904.   The motion to dismiss was based upon the principle enunciated in the cases of *Bush* v. *Keaton,* 65 *Ga.* 296, *Vickers* v. *Sanders,* 106 *Ga.* 266, and *Cooper* v. *State,* 121 *Ga.* 578.   The case of *Bush* v. *Keaton* was decided at the February term, 1880, of this court, and in effect ruled that when the certificate of the presiding judge to a bill of exceptions was not dated, and the acknowledgment of service was dated, the writ of error should be dismissed because the service of the bill of exceptions did not affirmatively appear to have been made after the certificate of the presiding judge was attached thereto.   The next year (1881), the General Assembly enacted that "No writ of error shall be dismissed in the Supreme Court because the clerk, sheriff, judge, or attorney at law shall have failed to affix a date to any official signature, unless it is made to affirmatively appear, by affidavit or other proof, in the Supreme Court that such official signature was made after the time required by law."   Civil Code, § 5566.   This provision of the code was construed in *Swatts* v. *Spence,* 68 *Ga.*

496, and it was held that "Since the act of 1881, if the certificate of the presiding judge to the bill of exceptions is not dated, it will be presumed to have been made on the day of the acknowledgment of service by counsel for defendant in error." When *Vickers* v. *Sanders* and *Cooper* v. *State* were under consideration, the attention of the court was not called to the case of *Swatts* v. *Spence,* supra, and in the great pressure of work it was overlooked by this court. In so far as the later cases of *Vickers* v. *Sanders* and *Cooper* v. *State* conflict with *Swatts* v. *Spence* on this subject, they must yield to the older case. *Calhoun* v. *Cawley,* 104 *Ga.* 344. It will therefore be presumed that the judge's certificate was signed on the day that service of the bill of exceptions was acknowledged. Where the certificate of the judge and the acknowledgment of service bear the same date, the signatures will be presumed to have been made in their chronological sequence, and especially so when the acknowledgment of service admits "due and legal service." *Cowart* v. *Page,* 59 *Ga.* 235. The motion to dismiss the writ of error is denied.

2. The evidence shows that the plaintiff was an officer of the insurance company. By the terms of the policy the premiums were payable in cash. The agent soliciting the insurance accepted the note in suit in lieu of the cash, and discounted it with the plaintiff. The insurance company had no interest in the note, and the plaintiff purchased it before due, as an individual investment, and not as a representative of the company. The soliciting agent was to receive a certain proportion from the first premium, as his commission, and, from the proceeds of the sale of the note to the plaintiff, the soliciting agent, Wyatt, paid to the company its share of the premium, retaining the balance in satisfaction of his commission. When the defendant offered to prove his complaint to Wyatt, made about two weeks after the execution and delivery of the note, to the effect that there was an error in his middle name, and Wyatt promised to have the mistake corrected but failed to do so, objection was made to this testimony on the ground that the plaintiff was a bona fide purchaser before the maturity of the note, which was negotiable, and that he was not bound by any equities existing between the maker and the payee. The court overruled the objection. The plaintiff was secretary of the insurance company, and notice will be imputed to him of

everything which the application for insurance or the policy contained; but if he purchased the note given for the premium without notice of any understanding had with the insured and the soliciting agent, he would not be bound by such agreement or promise. *Shedden* v. *Heard*, 110 *Ga.* 461. It does not appear that there was a written application for insurance, or, if there was one, that the middle name of the insured as given in the application was different from that contained in the policy. The possession of the insurance policy was retained by the defendant after the discovery of the mistake; he made no request of the company to correct it. An error in the middle name of the insured in a policy of life-insurance will not, after his acceptance of the policy, constitute a valid defense to an action upon a promissory note given for the amount of the first premium due upon the policy, unless it affirmatively appears that after discovering the error the insured made a proper request for its correction and the same was refused. *Jones* v. *Methvin*, 97 *Ga.* 449. The court should have excluded the testimony. Even though the plaintiff had not purchased the note before due and without notice, the evidence was insufficient to sustain the plea of want of consideration.

3. The defendant in error insists that the verdict was demanded by the evidence, because the policy was not issued in compliance with the charter of the insurance company. The charter provided that the insurance company should have power to set aside or reserve a stipulated portion of premiums for expenses in conducting the business of the company, which portion of premiums should be stated in the contract with the insured. The policy did contain a stipulation as to a reservation of premiums for expenses, which stipulation is set forth in the foregoing statement of facts. This was a substantial compliance with the direction in the charter on this subject. The amount reserved for expenses by this stipulation may have been too small or too large to meet the necessary expenses in conducting the business. When the policy was received by the assured, he should have declined to accept it, if he was not satisfied with the allotment of premiums for expenses. He did not do this, and he will be presumed, from his acceptance of the policy, to have assented to the apportionment of premiums for expenses as expressed in the contract of insurance. The court

erred in refusing a new trial; and the judgment overruling the motion for a new trial is

*Reversed. All the Justices concur, except Candler, J., absent.*