## BARTON *v.* JOHNSON.

The evidence required a verdict for the defendants, and there was no error in directing it.

JANUARY 9, 1912.

Ejectment. Before Judge Felton. Bibb superior court. August 23, 1910.

*Claud Estes* and *Walter Defore,* for plaintiffs.

*L. D. Moore,* for defendants.

EVANS, P. J. This is an action of ejectment on the several demises of W. M. Barton, C. W. Barton, H. S. Barton, and Fannie Barton, against A. E. Johnson, J. C. Johnson, and W. R. Johnson, to recover the east half of lot number 130, the east half of lot number 129, and the west half of lot number 131, in the 5th district of formerly Houston, now Bibb county, Georgia. The defendants in their plea set up title by judicial sale, title by adverse possession, and res adjudicata as to three of the plaintiffs, and equitable estoppel as against all. Upon the conclusion of the evidence a verdict was directed for the defendants, and the plaintiffs excepted. The case as made by the evidence was as follows: It was admitted that John Barton was the common propositus. John Barton on July 16, 1864, executed his will; the material parts as affecting this case are the 2d and 3d items thereof: "2. My will and desire is, and I so desire and bequeath, that all my property, real, personal, and mixed, shall remain together under the control and management of my wife, Frances F. Barton, for the joint support and maintenance of herself and my child or children during her widowhood; with these qualifications, viz.: upon the arrival of my present son, John F. Barton, at 21 years, he is to have one undivided half of my property, unless I leave a posthumous child; or if there be one and it be a daughter, then John Frances is to have the half as stated. If there be a posthumous son, he is to take his one third on reaching 21 years, and the other third to belong to my wife during her life or widowhood—in each of which events her part of the property is to belong equally to my children or child in life. It will be seen that I make this will in view of the uncertainty of my return from the army, where I expect to go in a few days. I also desire here to explain that the provision made in the event of a second marriage is done in no unkind spirit towards my wife, but simply because I prefer my children to have all my property rather than any of it should go to the support of or be managed by a stepfather. 3rd. In case my wife shall outlive my children or child, they leaving no issue, then at her death I will and bequeath all my property equally to be divided between my brothers and sisters." John Barton died in May, 1879, leaving a widow and four children, the plaintiffs. John F. Barton, men-

tioned in the will, died before the death of his father. The will was admitted to probate, and letters testamentary issued to Frances F. Barton. In 1879 a twelve month's support was duly set apart in the sum of $1,200 in money to Frances F. Barton and her four minor children out of the estate of John Barton. An execution issued on this year's-support judgment, and was levied upon the east half of lot 129 and the east half of lot 130, and these two lots were purchased at sheriff's sale by one Thomason as trustee for Mildred Johnson. The land was pointed out by Frances F. Barton, and the purchaser at the sale was put in possession of the east half of lot 129 and the west half of lot 131 under the impression that the latter lot was the east half of lot 130, and the land was bid off by the purchaser under this mistake. The widow and the plaintiffs were in possession of the east half of lot 130 until the year 1893, when they sold it to Mrs. Satira R. Grace, all of them joining in the conveyance. The present defendants are privies in estate with the purchaser at sheriff's sale, and have been in the continuous, adverse possession of the east half of lot 129 and the west half of lot 131 since the sheriff's sale in 1881. In 1893 W. M. Barton and C. W. Barton brought their several suits against J. C. Johnson to recover the east half of lot 129, which suits resulted in verdicts for the defendant, upon which judgments were duly entered by the court. In the same year Fannie Barton brought suit against Mrs. A. E. Johnson to recover the west half of lot 131, alleging in her abstract of title that her mother and brothers had conveyed their interests in this lot to her. This suit terminated in a verdict for the defendant, upon which a judgment was entered in 1895.

Under the will of John Barton it is clear that he contemplated his early demise, and intended to devise his property to his wife and son, John F., and an expected posthumous child. John F. predeceased his father, and there was no posthumous child. It was argued that the will could not be relied on as a muniment of title, because it was revoked by the birth of children, which contingency was not provided for in the will. The statute provides that the birth of a child to the testator subsequently to the making of the will, in which no provision is made in contemplation of such event, shall be a revocation of the will. Civil Code (1910), § 3923. It may be that the birth of other children than those referred to in

the will would operate to revoke the same; yet the proper place to determine that question is in the ordinary's court on a motion to vacate the judgment of probate. After the will has been probated, the judgment of probate can not be collaterally attacked. We do not find it necessary to decide what interest, if any, the plaintiffs in error take as devisees of their father. It is clear that, until the will is set aside, the mother would take at least a one-third interest in the property, which would pass to the plaintiffs in error upon her death; and they would be entitled to recover at least her interest, unless they are barred by some of the defenses averred in the plea and cross-petition. We will therefore immediately take up the several defenses and discuss their merits.

As to the east half of lot 129 there can be no doubt that the defendants acquired title by virtue of the sale of the same under the year's-support fi. fa. in favor of Frances F. Barton and her four minor children. The year's-support proceedings and the sale all appear regular upon their face, and no attack is made thereon by the plaintiffs in error. Besides, as against three of the plaintiffs, that title has been confirmed by judicial decree. As to the east half of lot 130, there is no contention that the defendants or their predecessors in title from the purchaser at the sheriff's sale ever entered into possession of it, and the defendants claimed neither possession of it nor title to it. As to the west half of lot 131 we think that the plaintiffs are equitably estopped from claiming title to it. It appears that the land was pointed out to the sheriff for levy by Mrs. Barton, and was misdescribed by the wrong number. It was sold by the sheriff and purchased by the successful bidder at the sale, under the belief that it was the east half of lot 130. The purchaser was put into possession of the west half of lot 131, as being the land conveyed to him by the sheriff, and he and his grantees have remained continuously in the possession of the land for nearly 30 years prior to the institution of this suit. The deed from the sheriff was promptly recorded. In 1893 Mrs. Barton and three of the children, who were then of full age, joined in the conveyance to Mrs. Grace; and three years thereafter, upon the arrival at age, the other plaintiff ratified the conveyance. Mrs. Grace went into possession of the land purchased by her; and as there is nothing in the record impugning her good faith, her adverse possession for more than seven years has ripened into a prescriptive

title, as against the plaintiffs, to the east half of lot 130. There is no dispute that the east half of lot 130 and the west half of lot 131 were of equal value. In their pleadings the defendants prayed that the sheriff's deed be reformed so as to correct the misdescription of the land, and the sheriff and his grantee were made parties to the suit. The ground for equitable estoppel consists in the sale of two adjacent lots of equal value, where the purchaser is put in possession of one lot, when the other lot was the one described in the sale. The owners of these two lots have received the full value of both of them, one in the proceeds of the sheriff's sale and the other in the purchase-money from Mrs. Grace. Under these circumstances the plaintiffs, even if they, with their mother, were clothed with the entire title to the land, would be estopped from asserting title against the defendant in error. *Swatts* v. *Spence,* 68 *Ga.* 496. We have not alluded to the 30 years adverse possession of the defendants, more than seven years of which continued after the majority of the youngest plaintiff in error, for the reason that so long as the judgment of probate stands they are not entitled to the interest which their mother took under the will until after her death in 1908, and for the further reason that the plaintiffs in error are equitably estopped from recovering the land.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding*